WOMEN IN CITY GOVERNMENT UNITED, Barbara Robertson, Leslie Boyarsky, Jacquelin Gross, Arlene Friedman, Robert Sussman, Alicia Cantelmi, Pamela Mills, Susan Pass, Linda Zises, Emily Blitz, Susan Padwee, Elaine Justic, Eula Carter and Linda Shah, on behalf of themselves and others similarly situated, Plaintiffs-Appellants,

v.

The CITY OF NEW YORK, Abraham Beame as Mayor of the City of New York, John V. Lindsay, Harry Bronstein, as City Personnel Director, New York City Health and Hospitals Corporation, New York City Housing Authority, New York City Off-Track Betting Corporation, Joseph Monserrat, Seymour P. Lachman, Isaiah E. Robinson, Jr., Mary E. Meade, Constituting the Board of Education of the City of New York, Blue Cross & Blue Shield of Greater New York, Group Health Incorporated, Social Services Employees Union, Social Services Employees Union Welfare Fund, District Council 37, American Federation of State, County & Municipal Employees, District Council 37, Health & Security Plan, United Federation of Teachers and United Federation of Teachers Welfare Fund, Defendants-Appellees.

No. 1245, Docket 74–2352.

United States Court of Appeals, Second Circuit.

Argued June 6, 1977.

Decided Sept. 28, 1977.

K. Randlett Walster, New York City (Herbert Jordan, Rabinowitz, Boudin & Standard, New York City, of counsel), for plaintiffs-appellants Women In City Government United.

David W. Fisher, New York City (W. Bernard Richland, Corp. Counsel of the City of New York, New York City, of counsel), for defendants-appellees City of New York, Mayor Abraham Beame, City Personnel Director Harry Bronstein, New York City Health and Hospitals Corporation, New York City Off-Track Betting Corporation and the members of the Board of Education of the City of New York.

Donald B. Da Parma, New York City (Breed, Abbott & Morgan, New York City, of counsel), for defendant-appellee Blue Cross & Blue Shield of Greater New York.

Gerald J. Barre, Great Neck, N. Y. (Stephen F. Gordon, Mirkin, Barre, Saltzstein & Gordon, P. C., Great Neck, N. Y., of counsel), for defendants-appellees Social Service Employees Union Local 371 and Social Service Employees Union Local 371 Welfare Fund.

Robert M. Ziskin, Great Neck, N. Y. (Stephen F. Gordon, Mirkin, Barre, Saltzstein & Gordon, P.C., Great Neck, N. Y., of counsel), for defendants-appellees United Federation of Teachers and United Federation of Teachers Welfare Fund.

Bertram Perkel, New York City (Victor Metsch, Hartman & Craven, New York City, of counsel), for defendant-appellee District Council 37, Health & Security Plan.

Benjamin Schlesinger, Schulman, Abarbanel & Schlesinger, Julius Topol, New York City, for defendant-appellee District Council 37, American Federation of State, County & Municipal Employees.

Diana E. Pinover, Trubin, Sillcocks, Edelman & Knapp, New York City, for defendant-appellee Group Health Incorporated.

Before MANSFIELD, TIMBERS and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

This action was begun on January 17, 1974, with the filing of a class action complaint. Plaintiffs allege violations of the Fifth and Fourteenth Amendments to the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Civil Rights Act of 1870, 42 U.S.C. § 1981. Plaintiffs also assert claims arising under the New York State Constitution, the Administrative Code of the City of New York, and a New York City Mayoral Executive Order. Jurisdiction over the federal claims is predicated upon 28 U.S.C. § 1343(3), 42 U.S.C. § 1983, and 42 U.S.C. § 2000e–5(f)(3). The federal courts are alleged to have pendent jurisdiction over the state claims.

The eleven causes of action alleged by the plaintiffs contain three distinct types of claims. The first type is reflected in the first cause of action:

Defendants . . . have . . . discriminated against the plaintiffs in this action in terms and conditions of employment because of sex, in that the health and hospitalization insurance plans negotiated and approved . . . and provided . . . in connection with city employment offer substantially fewer benefits for pregnancy and pregnancy-related conditions than for other medical and surgical problems requiring hospital and medical care.

The fourth cause of action is representative of the second type of claim:

The defendants . . . have discriminated against plaintiffs . . . because of sex, in that the defendants have established and administered [a] Welfare Fund which offers no temporary disability benefits for disability resulting from pregnancy and pregnancy-related conditions, while temporary disability payments are provided for disability resulting from other medical and surgical conditions.

Finally, the seventh cause of action exemplifies the third type of claim:

The defendant City has adopted, maintained and enforced a leave policy which prior to September 1, 1972 discriminated against [plaintiffs] on the basis of sex. The City policy required an employee to report her pregnancy by the fourth month of pregnancy. Female city employees were not permitted to work after the completion of the fifth month of pregnancy without special permission. Pregnant employees were required to submit to a physical examination prior to resuming employment. Accrued sick leave could not be fully utilized by an employee required to take maternity leave. A pregnant employee on maternity leave, after exhaustion of the annual and sick leave permitted to be utilized for maternity leave, lost her coverage under the City's health and hospitalization plans.

The plaintiffs seek injunctive and declaratory relief, as well as actual and punitive damages.

The Supreme Court decided *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256, on June 17, 1974. In that case, the Court held that a disability insurance system established under California law, which excluded certain disabilities resulting from pregnancy, did not constitute gender-based discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment because "[t]here [was] no risk from which men [were] protected and women [were] not [and] no risk from which women [were] protected and men [were] not." *Id.* at 496–97, 94 S.Ct. at 2492 (footnote omitted). In a footnote, the Court explained that

Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

*Id.* n.20. The language of this footnote led the district judge to conclude that, absent an allegation of pretext, the plaintiffs' complaint failed to state a claim under Title

VII. In the hope of eliminating the need to conduct unnecessary proceedings, the court scheduled argument as to whether, in light of *Aiello,* the complaint in this action, along with the complaint in a related action, *Communications Workers of America v. A. T. & T. Co.,* should be dismissed.

After the issue was briefed and argued, the district judge dismissed the complaints in both actions with leave to replead and certified to this Court, under 28 U.S.C. § 1292(b), the question of whether *Aiello* was dispositive in a Title VII case. 379 F.Supp. 679 (S.D.N.Y.1974). In the *Communications Workers* case the appeal was allowed, but in this case leave to appeal was denied. The plaintiffs in this case elected not to amend, and the district court dismissed the complaint with prejudice. From that final judgment, plaintiffs appealed.

In the interim, this Court held in *Communications Workers of America v. A. T. & T. Co.,* 513 F.2d 1024 (2d Cir. 1975), that because *Aiello* was an Equal Protection case it was not dispositive of claims brought under Title VII. Upon the plaintiffs' motion, the instant case was summarily vacated and remanded on May 15, 1975, for further proceedings not inconsistent with the *Communications Workers* decision. Petitions for writs of certiorari were filed in both cases. On January 10, 1977, the Supreme Court granted both petitions, vacated the judgments and remanded the cases to this Court for further consideration in light of *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), which had been decided on December 7, 1976. 429 U.S. 1033, 97 S.Ct. 724, 50 L.Ed.2d 744. *Communications Workers* was vacated and remanded to the district court by order dated February 22, 1977.

DISCUSSION.

This Court's opinion in *Communications Workers* focused on an extremely narrow issue, namely, whether *Aiello* is dispositive in a Title VII case. The Court held that it was not, noting that

> Nowhere, either in the body of the majority opinion in *Aiello* or in the footnote [20], is there any reference to the provisions of Title VII or the EEOC guidelines designed to prohibit the disparate treatment of pregnancy disabilities in the employment context.

513 F.2d at 1030. Upon remand, it would have been the obligation of the district court to explore the open question of whether the exclusion of pregnancy-related disabilities amounted to disparate treatment or was a *per se* violation of Title VII, as provided in EEOC guidelines, 29 C.F.R. § 1604.10. That question has now been resolved in the negative by the Supreme Court's decision in the *General Electric* case, which holds that a private employer's exclusion of pregnancy-related disabilities from coverage under its disability plan does not violate Title VII, notwithstanding the EEOC guidelines. *See generally,* Recent Developments, 45 Fordham L.Rev. 1202 (1977).

■ The plaintiffs contend that *General Electric* merely precludes them from proceeding on a disparate treatment theory, and does not bar them from establishing discrimination through proof of disparate impact under *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). They echo the claim made before the district court to the effect that they intend to prove that the plans have a "grossly disproportionate impact on women." Brief for Women in City Government United at 11. This argument is based on dictum in the *General Electric* case, and we find it unpersuasive. In order to bolster the finding of non-discrimination in *General Electric,* the Supreme Court noted that the plaintiffs had not even attempted to prove a discriminatory effect. While this theoretically implies the possibility of a case based on a disparate impact theory, it hardly amounts to a holding that if the plaintiffs had successfully proved that the exclusion of pregnancy-related disabilities had a discriminatory effect, they would have made out a prima facie case.

An insurance plan is merely a form of compensation. 429 U.S. 139, n. 17, 97 S.Ct. 401. Discriminatory effect or impact, in

this context, is not measured by reference to a single form of compensation, but could be proved only by showing a disparity in the total value of all forms of compensation given to men and women. In determining whether such a disparity existed, it would be necessary to compute the value not only of health and disability insurance plans, but also of salary, life insurance and retirement plans, fringe benefits such as transportation, day-care services, physical fitness facilities, and the like. Obviously, the inclusion or the exclusion of pregnancy-related disabilities would have an insignificant impact on such a comprehensive determination. Moreover, any inequality of effect that might be produced as a result of the exclusion of pregnancy-related disabilities could be offset by inequalities resulting from, for example, a retirement plan to which women might contribute equally, but from which women might benefit unequally because, on the average, they live longer than men.[1] Thus, if plaintiffs' view were sound, it would require every employer subject to Title VII to determine separately, with respect to race, color, religion, sex or national origin, the value of each type of compensation he provides. Presumably, the disparities that would inevitably be discovered would each have to be justified by a business necessity. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To read Title VII so as to require such determinations and justifications to be made by employers, and, concomitantly, by the district courts, would be to impose upon the Act an administrative complexity undreamed of by its draftsmen. Had the Supreme Court wanted the lower federal courts to embark on such a course, it would have been far more explicit in the *General Electric* opinion; indeed, the entire thrust of recent Ti-

tle VII decisions appears to point in the opposite direction.

Accordingly, to the extent that the first six causes of action are based on the Fourteenth Amendment, they must fail under *Aiello*; to the extent that they are based on Title VII, they must fail under *General Electric.* To the extent that plaintiffs' claims arise under State law, they may well have merit. *See Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board,* 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976). We need not decide whether pendant jurisdiction ever existed over these claims, for there is no longer any reason to resolve them in federal court. Accordingly, they should be left for resolution by the State courts. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[2]

■ In dismissing the entire complaint, the district court was under the impression that all eleven causes of action are "variations on the theme of" the first. 379 F.Supp. at 681. They are not. The seventh through eleventh causes of action allege a discriminatory forced maternity leave program. In *Green v. Waterford Board of Education,* 473 F.2d 629 (2d Cir. 1973), this Court held that such programs were so irrational as to violate the equal protection clause. In *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the Supreme Court held that they were so irrational as to violate the due process clause. The Supreme Court has granted certiorari in two cases which raise the question whether they violate Title VII. *Berg v. Richmond Unified School District,* 528 F.2d 1208 (9th Cir. 1975), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 806, 50 L.Ed.2d 788 (1977); *Satty v. Nashville Gas Co.,* 522 F.2d 850 (6th Cir. 1975), *cert. granted,* 429 U.S.

1. The Ninth Circuit has recently held that an employer who attempts to compensate for this actuarial inequality violates Title VII. *Manhart v. City of Los Angeles, Department of Water,* 553 F.2d 581 (9th Cir. 1976), *petition for cert. filed,* 45 U.S.L.W. 3841 (U.S. June 20, 1977). *See generally* Bernstein & Williams, Title VII and the Problem of Sex Classification in Pension Programs, 74 Colum.L.Rev. 1203 (1974).

2. Although we remand this case for a further consideration of plaintiffs' claims concerning the defendants' forced maternity leave policies, the state claims cannot be deemed pendant to those federal claims, for the legal and factual issues involved in these distinct types of claims are considerably different.

1071, 97 S.Ct. 806, 50 L.Ed.2d 788 (1977). Thus, plaintiffs' last five causes of action stand on a somewhat stronger footing than the first six.

■ The Corporation Counsel argues that the plaintiffs' claims with respect to maternity leave are barred under our recent decision in *Monell v. Department of Social Services,* 532 F.2d 259 (2d Cir. 1976), *cert. granted,* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977); on grounds of mootness (the City's leave policies have been changed); res judicata (*Monell* was a class action); and lack of subject matter jurisdiction (City is not a "person" within the meaning of 42 U.S.C. § 1983). However, none of these issues was presented to or passed on by the district court, and it would be inappropriate for this Court to address them in the first instance. *Baretge v. Barnett,* 553 F.2d 290 (2d Cir. 1977).

Accordingly, the judgment of the district court, to the extent that it dismissed the first six causes of action alleged in the complaint, is affirmed; the judgment is reversed insofar as it dismissed the seventh through eleventh causes of action; and the case is remanded for further proceedings not inconsistent with this opinion.

MANSFIELD, Circuit Judge (concurring):

I concur in the result and with one exception in Judge Meskill's thoughtful and carefully considered opinion.

My only qualification lies in the interpretation and application of the Supreme Court's opinion in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). In that decision the Court left open the possibility that in accordance with *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), a plaintiff might make out a prima facie case of gender-based discrimination under Title VII by showing that an insurance plan had a discriminatory impact on employees of one sex. It appears to me that in the present case the majority goes too far in construing *General Electric* as requiring a plaintiff first to go through the

extremely difficult, if not impossible, task of computing the total value to men and women, respectively, of all forms of compensation paid by the employer to employees of each sex, including not only health and disability plans but also salary, fringe benefits, day care services, physical fitness facilities and the like, in order to show an overall disparity.

In my view the "discriminatory impact" test of *Griggs* may be met by a lesser showing. At the outset the plaintiff should be required to show only that the package of disability insurance plans made available by the employer to its employees is worth more to one sex than to the other. In that event the employer would have the burden of showing that the non-inclusion of certain risks with respect to employees of one sex is offset by other financial advantages extended to employees of that sex.

Applying these principles, I reach the same result as the majority in the present case, albeit by a slightly different route. Plaintiffs' complaint neither alleges nor suggests that as a result of the non-inclusion of pregnancy-related disabilities women employees receive less total insurance benefits than do male employees. On the contrary, the complaint alleges only that the New York City health and hospitalization insurance plans discriminate against the plaintiffs by providing "substantially fewer benefits for pregnancy and pregnancy-related conditions than for other medical and surgical problems requiring hospital and medical care." Nor have plaintiffs suggested that they know of any facts indicating that the insurance plans in issue are worth less to females than males. Indeed plaintiffs' counsel has frankly asserted that she desires the opportunity to engage in discovery for the purpose of determining whether such a cumulative impact may exist.

Under these circumstances continuation of the lawsuit for that purpose should not be permitted. Although notice pleading is allowed under our liberal Federal Rules, to permit the action to proceed on such a

nebulous basis would be to license a wholly unjustified abuse of our facilities for administration of justice, leading to unnecessary, wasteful and expensive proceedings. Before an attorney may sign a complaint and thus trigger the launching of a pretrial discovery juggernaut, he must have some factual basis for believing that "there is good ground to support it." See Rule 11, F.R.Civ.P. Here the plaintiffs, who instituted the action on an entirely different theory, not only lack any such basis but have no reason to believe that one exists. Their complaint was drafted and signed by their counsel long before *General Electric* and they should not now be permitted to use that complaint as a means of seeking a factual basis for an entirely different claim.

This case, therefore, is on all fours with that before the Seventh Circuit in *Guse v. J. C. Penney Co.,* 562 F.2d 6 (decided August 10, 1977), where the plaintiff's complaint alleged that an employer's group medical insurance and sickness benefit plan was vulnerable under Title VII because of its exclusion of pregnancy-related benefits. In holding that the complaint must be dismissed under *General Electric* Judge Pell, in response to the argument that the case should be remanded to allow the plaintiffs to attempt to make out a case on a "discriminatory impact" theory, stated:

> "With all due deference to the liberal pleading rules embodied in the Federal Rules of Civil Procedure, we cannot believe that anyone reading those five words (utterly unsupported by any factual allegations) would understand this complaint to be attacking the company's benefits package as a whole, in terms of aggregate risk protection. The course of proceedings in the district court reinforces this conclusion, as it demonstrates that no one connected with this lawsuit has ever so understood the complaint."

This observation applies with equal force to the present case. On this basis I concur in our affirmance of the dismissal of the complaint.